

ELIAS
LAW
GROUP

10 G Street NE, Suite 600 | Washington, DC 20002

January 20, 2022

**MEMO ENDORSED**

<u>**VIA ECF**</u>
Hon. Katherine Polk Failla
U.S. District Court for the Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 14A
New York, NY 10007

Re:    *The Brooklyn Branch of the National Association for the Advancement of Colored People
       v. Peter S. Kosinski, et al.*, Case No. 1:21-cv-07667-KPF

Dear Judge Failla:

         On behalf of Plaintiff the Brooklyn Branch of the National Association of Colored People,
we submit this response, pursuant to this Court's Individual Rule 4(A), setting forth Plaintiff's
opposition to Defendants' proposed motion to dismiss.[1] Plaintiff challenges N.Y. Elec. Law § 17-
140 (the "Ban"), which criminalizes the expressive conduct of providing refreshments or other
supportive provisions to electors waiting in line to vote. Plaintiff alleges that this law 1) violates
its First Amendment freedoms of speech and expression, and 2) is unconstitutionally vague and
overbroad. Defendants preview four grounds for dismissal, all of which are without merit.

         **1.  Plaintiff has adequately alleged standing.**

         First, Defendants are wrong to suggest that Plaintiff must allege its own history of line
relief efforts—and of the Ban's enforcement—to establish standing. As Defendants recognize,
some version of the Ban has been in effect since 1909—thirteen years longer than Plaintiff has
existed. Plaintiff is not required to enter the maw of New York's penal system—or identify others
who have risked criminal jeopardy—to vindicate its constitutional rights. Courts consistently
recognize that "it is not necessary that petitioner first expose himself to actual arrest or prosecution
to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."
*Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *see also MedImmune, Inc. v. Genentech, Inc.*, 549
U.S. 118, 128–29 (2007) ("[W]here threatened action by government is concerned, we do not
require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the
threat"). Federal courts have also long resolved that plaintiffs' fear of prosecution suffices for
standing—even where enforcement is in doubt—when it is apparent that plaintiffs' intended
conduct will violate a statute's terms. *See, e.g.*, *Babbitt v. United Farm Workers Nat'l Union*, 442
U.S. 289, 302 (1979) (holding fear of prosecution was credible, even though challenged provision
had never been applied to plaintiffs' proposed conduct, where statute "on its face" proscribed the
conduct); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (holding physicians had standing to challenge

---

[1] Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano, Todd D. Valentine, and Robert A. Brehm (the
"State Board Defendants") submitted a letter on January 14, 2022 describing their grounds for a proposed motion to
dismiss, which Defendant Commissioner of the Board of Elections in the City of New York (the "City Board") joined.

abortion statutes, "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution," because "[t]he physician is the one against whom these criminal statutes directly operate"); *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) (similar).

### 2. The Ban criminalizes protected expression.

On the merits, Defendants seek to obscure the expressive act of providing aid to voters who must endure hours-long lines to exercise their right to vote. The Eleventh Circuit recently recognized that food-sharing can be expressive conduct protected by the First Amendment where the organization providing food "establish[s] an intent to 'express[] an idea through activity, and the reasonable observer would interpret its food sharing evens as conveying *some* sort of message." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1243 (11th Cir. 2018) (internal citation omitted). This is true of the line relief efforts that Plaintiff would engage in, but for the Ban. By providing refreshment to individuals queuing to vote—but not, for example, queuing at a post office—Plaintiff's message would be clear: people who endure long lines to participate in New York's elections merit celebration and solidarity.[2] Of course, a "narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) (recognizing "if confined to expressions conveying a 'particularized message,' [the First Amendment] would never reach the unquestionably shielded painting of Jackson Pollack, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll"). The conduct must simply be expressive, and what Plaintiff wishes to do fits that bill. Defendants' very defense of the Ban—that it is necessary to "protect voters from intimidation and improper influence," State Bd. Defs. Ltr. at 1—insufficient as it is, presupposes that these interactions are communicative. An act that expresses nothing can neither intimidate nor influence.

### 3. The Ban is not justified by sufficient state interests.

Because the Ban implicates protected First Amendment conduct, it must meet exacting scrutiny, which requires the state to show that it is narrowly tailored to serve a compelling interest. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). The cases Defendants cite for their argument that states have "wide discretion" to regulate activity around polling places are inapposite; those decisions concerned the regulation of electioneering behavior meant to influence *which candidate* voters would support. *See id.* at 3 (citing *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876 (2018); *Burson v. Freeman*, 504 U.S. 191 (1992)). But states' interest in maintaining neutrality between candidates and causes is not implicated here, where the proscribed activity merely supports voters' *ability* to exercise their right to vote; it does not advocate for any particular candidate, party, or cause. And while *Mansky* held that "the interior of a polling place" is a non-public forum, 138 S. Ct. at 1885-86, the ban here contains no geographic limit (indeed, the restrictions are *loosened* inside the polling place). Defendants are also wrong to label the restrictions as content neutral. The Ban ostensibly criminalizes the distribution of ponchos to voters on public sidewalks "in connection with or in

---

[2] Moreover, any dispute regarding Plaintiff's intended message is inappropriate at the motion to dismiss stage, where all factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

respect of any election," N.Y. Elec. Law § 17-140, while permitting a local merchant's promotional poncho giveaway to all passersby on the same sidewalk. *Cf. Burson*, 504 U.S. at 197 (holding statute was content-based because its scope depended "entirely on whether [individuals'] speech is related to a political campaign," and it did not "reach other categories of speech, such as commercial solicitation [and] distribution. . . ."). Accordingly, the Ban is subject to exacting scrutiny, and Defendants cannot show that it is narrowly tailored to any compelling interest.

### 4. The Ban is vague and overbroad.

The Ban is also unconstitutional because it is both vague and overbroad. *See generally United States v. Stevens*, 559 U.S. 460, 473 (2010); *see also Hill v. Colorado*, 530 U.S. 703, 732 (2000) ("A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."). Defendants conspicuously fail to hazard their own conjectures as to what the Ban truly permits, and for good reason. In its one dense sentence, the Ban provides: "Any person who directly or indirectly by himself or through any other person in connection with or in respect of any election during the hours of voting on a day of a general, special or primary election gives or provides, or causes to be given or provided, or shall pay, wholly or in part, for any meat, drink, tobacco, refreshment or provision to or for any person, other than persons who are official representatives of the board of elections or political parties and committees and persons who are engaged as watchers, party representatives or workers assisting the candidate, except any such meat, drink, tobacco, refreshment or provision having a retail value of less than one dollar, which is given or provided to any person in a polling place without any identification of the person or entity supplying such provisions, is guilty of a Class A misdemeanor." N.Y. Elec. Law § 17-140.

One must merely guess the outer bounds of activity prohibited by the Ban "in connection with or in respect of any election"—and risk criminal exposure if they guess wrong. Does the Ban apply on early voting days or only on election day? Is activity disallowed during official polling hours permitted to support voters queuing before and after those hours? May Plaintiff provide refreshments to voters outside the 100-foot radius where electioneering is proscribed? *See* Compl. ¶ 36. The Ban appears to exempt the provision of certain items that are valued at less than one dollar, provided anonymously, provided inside the polling place, and/or provided only to election workers and volunteers. Must a provision meet all of these criteria to qualify for exemption or only one? Does the term "refreshment or provision" cover just food and beverage or any physical item? The potential for unpredictable and arbitrary enforcement is endless, and the construction of the law presents far more puzzles than this abbreviated letter may address. At minimum, the Ban's prohibitions "are not clearly defined," failing the "basic principle of due process." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Respectfully submitted,

/s/ *John M. Geise*
John M. Geise
Counsel for Plaintiff

cc: All counsel (via ECF)

The Court is in receipt of Defendants' pre-motion letters regarding their contemplated motion to dismiss (Dkt. #28, 29) and Plaintiff's response (Dkt. #30).  The Court will dispense with its usual requirement of a pre-motion conference and will allow the parties to proceed directly to briefing.  The parties shall adhere to the following briefing schedule: Defendants' motion to dismiss is due **March 1, 2022;** Plaintiff's opposition is due **March 31, 2022;** and Defendants' reply is due **April 14,2022.**

Further, the conference scheduled for January 27, 2022, is hereby ADJOURNED *sine die.*

The Clerk of Court is directed to terminate the pending motions at docket numbers 28 and 29.

Dated:      January 25, 2022            SO ORDERED.
            New York, New York

                                        HON. KATHERINE POLK FAILLA
                                        UNITED STATES DISTRICT JUDGE